IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HOME LINE FURNITURE INDUS., INC. b/d/a HOME LINE INDUS., | : : : | CIVIL ACTION |
| Plaintiff, | : : | NO. 09-1713 |
| v. | : : | |
| BANNER RETAIL MARKETING, LLC, | : : : | |
| Defendant. | : : | |

**OPINION**

Slomsky, J.                                                                                          April 30, 2009

**I.     INTRODUCTION**

   The underlying state court action, which gave rise to the current diversity action, was filed by Plaintiff Home Line Furniture Industries, Inc. ("Home Line") against Defendant Banner Retail Marketing, LLC ("Banner") for an alleged breach of confidentiality agreements entered into by the parties. Plaintiff is a furniture manufacturer and wholesale distributor. Defendant is in the business of marketing products such as those sold by Plaintiff.

   At the same time Plaintiff filed its Complaint in the Philadelphia Court of Common Pleas on April 21, 2009, Plaintiff also filed a Petition for Preliminary Injunction, which was granted the next day, April 22, 2009, by the state court Emergency Judge. Although Plaintiff's Petition sought a preliminary injunction, the state court Emergency Judge titled his order a "Temporary Ex Parte Restraining Order" ("TRO"), which also contained a rule upon Defendant to show cause why the TRO should not be made permanent pending disposition of the underlying Complaint. The TRO set a hearing date of April 30, 2009 in the Philadelphia Court of Common Pleas.

1

Under Pennsylvania Rule of Civil Procedure 1531(a), a court may issue a preliminary or special injunction only after written notice and a hearing "unless it appears to the satisfaction of the court that immediate and irreparable injury will be sustained before notice can be given or a hearing held, in which case the court may issue a preliminary or special injunction without a hearing or without notice." *Pa. R.C.P. 1531(a)*. Although the terms "preliminary injunction" and "special injunction" are not defined in the Rule, it appears that when an order is issued ex parte and without notice that the order is analogous to the entry of a "special injunction." Steel City Group v. Global Online Direct, Inc., 2006 U.S. Dist. LEXIS 86831, at **5-6 (W.D. Pa. Nov. 30, 2006). A "special injunction" usually seeks relief that is auxiliary to the main relief requested in the complaint. In re Franklin Township Bd. Of Supervisors, 379 A.2d 874, 879 (Pa. 1977). The state court Emergency Judge in this case titled his order a Temporary Ex Parte Restraining Order, a term not used in the Pennsylvania injunction statute. It appears, however, that the TRO is in the nature of a "special injunction," and will so be considered by this Court in reviewing the propriety of the issuance of the TRO on April 22, 2009, and whether it should be dissolved.

Defendant removed this action to this Court on the morning of April 23, 2009. On the same day, Defendant filed a Motion to Reconsider State-Court Ordered Temporary Injunction (Doc. No. 3). After a telephone conference with counsel for the parties on the afternoon of April 23, 2009, this Court granted Defendant's Motion for Reconsideration and ordered that the TRO issued by the state court Judge was dissolved, vacated and set aside.[1] A written Order confirming

---

[1] Federal Rule of Civil Procedure 65(b)(4) states that "On 2 days' notice to the party who obtained the order without notice-or on shorter notice set by the court-the adverse party may appear and move to dissolve or modify the order." Given the nature of the situation that existed here as explained *infra*, which required expedited consideration by the Court, shorter notice than two days was warranted.

2

this ruling was filed April 24, 2009 (Doc. No. 4). This Opinion sets forth the reasons for granting Defendant's Motion to Reconsider State-Court Ordered Temporary Injunction and for dissolving the injunction.

**II.   FACTS**

Plaintiff instituted this action in the Philadelphia Court of Common Pleas on April 21, 2009. (Def. Memo. of Law in Support of Mot. for Reconsideration at 1 [hereinafter "Def. Reconsideration"].) In its Complaint, Plaintiff alleges that Defendant solicited Plaintiff as a client. (Pl. Compl. at 7.) Once Plaintiff hired Defendant, but before revealing any confidential information, Plaintiff required Defendant to enter into Independent Contractor Agreements, which Plaintiff styles as "Confidentiality Agreements." (Id.) Plaintiff and Defendant eventually entered into two such agreements. (Id.) After entering into these agreements, Plaintiff alleges that it disclosed to Defendant information about Plaintiff's proprietary Web Partner Program ("WPP"), an internet marketing program that Plaintiff developed at considerable expense. (Id. at 3-6, 8; Verification of David Bregler, Exh. A to Pl.'s Petition for Preliminary Injunction at ¶¶5-7 [hereinafter "Bregler Verif."].) Plaintiff alleges that after reviewing Plaintiff's WPP, Defendant copied the program and began marketing a nearly identical program to Defendant's other clients, including Ashley Furniture Industries, Inc. ("Ashley"), one of Plaintiff's main competitors. (Pl. Compl. at 8-9; Bregler Verif. ¶¶ 28, 30-31.) This allegation is made in the affidavit of Plaintiff's Director of Marketing, David Bregler, without providing any documentation or other evidentiary support in the Petition or Memorandum. (Pl. Compl. at 8-9; Bregler Verif. ¶¶ 28, 30-31.)

As noted above, the Petition for Preliminary Injunction and Complaint were filed on April, 21, 2009. Defendant was not properly served with the Complaint. Rather, Defendant was

informed via email on April 21, at approximately 4:40 p.m. Pacific Daylight Time (PDT),[2] that Plaintiff intended to file its Complaint and Petition for Preliminary Injunction. (Def. Reconsideration at 2). Plaintiff's email stated that it would file the Complaint and seek the Preliminary Injunction at 10:00 a.m. EST the following morning, April 22, 2009. (Def. Reconsideration at 2; Verification of Joyce Johnson, Exh. B to Def. Resconsideration at 1 [hereinafter "Johnson Verif."].) The next morning at 5:30 a.m PDT, after Defendant had an opportunity to consult with its corporate counsel in Washington, James Kalamon, Esquire, counsel called Plaintiff's counsel to inform him that Defendant objected to a hearing on such short notice and that Defendant did not believe it could obtain local counsel to appear at the TRO hearing at the designated date and time. (Johnson Verif. at 1.) Plaintiff's counsel would not agree to a short continuance to afford Defendant enough time to secure counsel in Philadelphia so that it could be represented at the TRO hearing.[3] Rather, Plaintiff sought the TRO from the state court Emergency Judge on April 22, 2009, before Defendant could be heard in person.

In order to provide at least some communication with the Emergency Judge, Defendant's counsel emailed Plaintiff's counsel a list of Defendant's objections regarding the Petition for

---

[2] Defendant Banner is located in the State of Washington, which is 3 hours behind Eastern Standard Time (EST). It is 7:40 p.m. EST when it is 4:40 p.m. PDT.

[3] In the telephone conference held with this Court and the parties on April 23, 2009, Plaintiff claimed that the Emergency Judge did not hear Plaintiff's Petition for Preliminary Injunction until the afternoon of April 22, and that Defendant therefore had ample time to secure counsel, having been notified about the hearing the night before. However, Defendant was not informed that the time of the hearing had been changed from 10:00 a.m. The only documented communication between Plaintiff and Defendant shows that Plaintiff notified Defendant that the hearing would take place at 10:00 a.m. (Letter from Mattioni to Stevenson, April 21, 2009, Exh. B to Def. Reconsideration [hereinafter "Mattioni Letter"].) If Defendant was never informed that the time had been changed, Defendant cannot be expected to have appeared at the hearing held on the afternoon of April 22, 2009.

Preliminary Injunction, and asked Plaintiff's Counsel to give the email to the Emergency Judge when he considered Plaintiff's Petition. (Email from Kalamon to Mattioni, April 22, 2009, Exh. D. to Def. Reconsideration [hereinafter "Kalamon Email"].) Plaintiff's Counsel informed this Court that Defendant's email was given to the Emergency Judge prior to his decision. (Transcript of Telephone Hearing at 7, 14, Home Line v. Banner, No. 09-1713 (E.D. Pa. filed April 22, 2009) [hereinafter "Telephone Hearing"].)[4]

Nonetheless, the state court Emergency Judge granted Plaintiff's Petition for Preliminary Injunction and enjoined Defendant from:

> using the subject information in violation of the Confidentiality Agreement and from copying, disclosing or using or allowing any other person to use the Trade Secrets and Confidential Information or any other product, information, program or device derived from such information, and specifically prohibiting any use of the Web Partners Program and related forms, templates, images, programs, devices, methods, techniques, processes or other related information and data or any other part thereof or any similar program which has been or might reasonably have been derived from Home Line's Trade Secrets and Confidential Information.

(Temporary Ex Parte Restraining Order at 2, Exh. A. Def. Reconsideration [hereinafter "Ex Parte TRO"].)

Both parties were scheduled to appear and market their products at a furniture trade show in High Point, North Carolina ("High Point Show"), which was scheduled to begin on April 24 or 25, 2009. (Telephone Hearing at 5-6.) This is a major trade show, one of the largest of its kind, where retail presentations are made for the furniture business. Defendant claims that the show was to begin on April 24, two days after the TRO was issued, and Plaintiff claims that the show

---

[4] This Court has reviewed the email and determined that it is not the equivalent of counsel appearing before a Judge to contest a matter after first filing an appropriate written response to the Petition for Preliminary Injunction. The email was not a substitute for the right to be heard after proper notice.

was to begin on April 25.  (Id.)  The date the show will end is April 30, the date set for the hearing in the Ex Parte TRO.  Both parties claimed that the TRO would have a significant impact on their businesses at the High Point Show.  Plaintiff alleged in its Complaint and Petition that allowing Defendant to market its web program, which was allegedly stolen from Plaintiff, would cause irreparable injury to Plaintiff's business.  (Pl. Compl. at ¶33.)  Defendant claimed that preventing it from marketing its materials at the High Point Show would cause tremendous negative financial consequences for Defendant.  (Def. Reconsideration at 3.)  With the Motion for Reconsideration, Defendant submitted in support of its claims the affidavit of Joyce Johnson, Defendant's Director of Human Resources and Planing (Exhibit "C").  Mr. Johnson explicitly denies the allegations contained in Plaintiff's Complaint and denies that Defendant violated the Confidentiality Agreements.

Given the circumstances presented in the Complaint, the Petition for Preliminary Injunction, and the Motion for Reconsideration, this Court held an expedited telephone conference with the parties on April 23, 2009 and ordered that the TRO entered by the state court Emergency Judge should be dissolved.

### III.    LEGAL STANDARD

#### A.    Temporary Restraining Order

This Court presides over this case under diversity of citizenship jurisdiction.  In a diversity case, the Court must apply the substantive law of Pennsylvania.  Erie R.R. v. Tompkins, 304 U.S. 64, 78-79 (U.S. 1938); Ford v. Exel, Inc., No. 08-cv-1735, 2008 U.S. Dist. LEXIS 103262, **3-4 (E.D. Pa. Dec. 17, 2008).

In Pennsylvania, the standard for granting a "special injunction" or TRO is set forth in

Pennsylvania Rule of Civil Procedure 1531(a).  Both federal and Pennsylvania courts deem a TRO to be an extraordinary remedy, granted only in limited circumstances.  Vigilante v. Statharos, No. 08-cv-3408, 2009 U.S. Dist. LEXIS 12324, *9 (E.D. Pa. Feb. 18, 2009).  In deciding whether to grant or deny a TRO:

> Pennsylvania Courts weigh whether (1) an injunction is necessary to prevent immediate and irreparable harm; (2) greater injury would result from refusing an injunction than from granting it; (3) an injunction would properly restore the parties to their status immediately prior to the alleged wrongful conduct; (4) the movant is likely to prevail on the merits of the action; (5) the requested injunction is reasonably suited to abate the offending activity; and (6) an injunction would adversely affect the public interest.

Id. at **9-10; see also Summit Town Centre, Inc. v. Shoe Show of Rocky Mount, Inc., 828 A.2d 995, 1001 (Pa. 2003).  These factors practically coincide with the factors a federal court considers in issuing a TRO pursuant to Federal Rule of Civil Procedure 65(b), a TRO being the federal equivalent to a "special injunction" under Pennsylvania law.  Vigilante, 2009 U.S. Dist. LEXIS 12324, at *10; Steel City Group, 2006 U.S. Dist. LEXIS 86831, at **5-6.

Pennsylvania Rule of Civil Procedure 1531(a), which sets forth the procedure governing preliminary and "special injunctions" in the underlying state court action, requires notice and a hearing prior to granting or denying a "special injunction."  *Pa. R.C.P. 1531(a)*; WPNT, Inc. v. Secret Communication Inc., 661 A.2d 409, 410-11 (Pa. Super. Ct. 1995).  The Supreme Court of Pennsylvania has further held that "it is . . . fundamental that all of the parties are entitled to a hearing before [a preliminary] injunction should issue." WPNT, 661 A.2d at 411 (quoting Pubusky v. D.M.F. Inc., 239 A.2d 335 (Pa. 1968)).  A "special injunction" may be granted in the absence of a hearing, but only upon a demonstration by the moving party that "immediate and irreparable injury will be sustained before notice can be given or a hearing held." *Pa. R.C.P.*

*1531(a)*; Commw. ex rel. Costa v. Boley, 272 A.2d 905, 909 (Pa. 1971).

If a trial court issues an ex parte "special injunction," and fails to provide for a hearing within the five-day time limit set by Pennsylvania Rule of Civil Procedure 1531(d), the ex parte special injunction is void on its face. Commw. ex rel. Costa, 272 A.2d at 909. Rule 1531(d) provides: "An injunction granted without notice to the defendant shall be deemed dissolved unless a hearing on the continuance of the injunction is held within five days after the granting of the injunction or within such other time as the parties may agree or as the court upon cause shown shall direct." *Pa. R.C.P. 1531(d)*. If there is a good reason for why a hearing must be held beyond the five-day period mandated by the Rule, such reason must appear in the order granting the special injunction. Commw. ex rel. Costa, 272 A.2d at 909.

B. **Motion for Reconsideration**

Whenever an action is removed from state court to a district court, "all injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450; Vigilante, 2009 U.S. Dist. LEXIS 12324, at *4. Upon removal to a federal court, a party may utilize the procedure found in Eastern District of Pennsylvania Local Rule of Civil Procedure 7.1(g) to move for reconsideration of a special injunction entered in state court prior to removal. See Vigilante, 2009 U.S. Dist. LEXIS 12324, at *4.

The Third Circuit has held that reconsideration should be granted sparingly, but is appropriate where (1) the moving party demonstrates an intervening change in the controlling law; (2) additional facts are made available, which were not available when the court first considered the issue; or (3) there is a need to correct a clear error of law or fact or to prevent

8

manifest injustice.  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  A party need only show one of the above grounds to establish that reconsideration is appropriate.  Id.

**IV.    ANALYSIS**

    **A.    Reconsideration of the TRO is appropriate under Eastern District of Pennsylvania Local Rule of Civil Procedure 7.1(g).**

Defendant has demonstrated the existence of two compelling factors which warrant reconsideration of the TRO under Eastern District of Pennsylvania Local Rule of Civil Procedure 7.1(g).  They are: (1) the presence of additional facts which were not available when the court first considered the TRO; and (2) to prevent manifest injustice.

        1.    *Presence of Additional Facts*

The Ex Parte TRO appears to have been issued purely on the basis of the allegations contained in Plaintiff's pleadings and the Bregler affidavit.  Defendant was not afforded sufficient time to respond either in person at the hearing on April 22 or in a written response.  When the action was removed to this Court, Defendant submitted the Motion for Reconsideration with the affidavit of Defendant's Director of Human Resources and Planning, Joyce Johnson, which was not before the state court Emergency Judge when he issued the TRO.  Mr. Johnson specifically denied Plaintiff's allegations of a violation of the Confidentiality Agreements.  Only Mr. Bregler's conclusory affidavit complaining that Defendant violated the Confidentiality Agreements has been presented to prove that Defendant misappropriated Plaintiff's confidential information.  No document or other evidence was provided.  Therefore, it is impossible to conclude, without a further hearing, which party is more likely to succeed on the merits of this case, a burden which was on Plaintiff as the party seeking the TRO.  Consequently,

because Plaintiff has not met its burden and for the reasons that follow, this Court ruled that the Ex Parte TRO must be dissolved.

        2.      *Prevent Manifest Injustice*

The second reason why the TRO was dissolved was to prevent manifest injustice.

        a.      Manifest injustice would result if the TRO remained in effect because Plaintiff has not established that the factors required to be considered in granting a TRO weigh in Plaintiff's favor.

In deciding whether to grant or deny a preliminary or "special injunction":

> Pennsylvania Courts weigh whether (1) an injunction is necessary to prevent immediate and irreparable harm; (2) greater injury would result from refusing an injunction than from granting it; (3) an injunction would properly restore the parties to their status immediately prior to the alleged wrongful conduct; (4) the movant is likely to prevail on the merits of the action; (5) the requested injunction is reasonably suited to abate the offending activity; and (6) an injunction would adversely affect the public interest.

Vigilante, 2009 U.S. Dist. LEXIS 12324, at **9-10; see also Summit Town Centre, Inc. v. Shoe Show of Rocky Mount, Inc., 828 A.2d 995, 1001 (Pa. 2003).  Both parties have asserted that irreparable harm will result from the Court's ruling on the TRO, whichever way the Court rules. Therefore, the application of the first factor is neutral to the parties.

The second factor which must be considered by the Court is whether greater injury would result from refusing an injunction than from granting it.  Vigilante, 2009 U.S. Dist. LEXIS 12324, at *9.  On the factual record here, it cannot be determined if greater injury would result from dissolving the TRO, or allowing it to remain in place.  Both parties contend that the issuance or the absence of the TRO would dramatically enhance or destroy their financial posture.  Because Plaintiff, as the moving party, has the burden to prove that greater harm would result from dissolving the injunction, and it does not do so, this factor weighs in favor of

dissolution.

The third factor—whether an injunction would properly restore the parties to their status immediately prior to the alleged wrongful conduct—also weighs in favor of dissolution of the TRO.  See Vigilante, 2009 U.S. Dist. LEXIS 12324, at *10.  There is no evidence that the injunction, as entered, would restore the parties to their status before the alleged wrongful conduct took place.  The meager factual record and contradictory assertions in the parties' affidavits prevent the Court from making any factual determination about whether or not Defendant committed any wrongful conduct.  If there was no wrongful conduct by the Defendant, the TRO would not restore the parties to the status quo, but rather would change the previous status of the parties.  Accordingly, application of the third factor indicates that the TRO should be dissolved.

The fourth factor a court must consider in deciding to grant a "special injunction" is whether the moving party has demonstrated a likelihood of success on the merits of its underlying claim.  Vigilante, 2009 U.S. Dist. 12324, at *10.  In moving for the TRO, Home Line filed its Complaint, and a Petition for Preliminary Injunction, which included an affidavit of Plaintiff's Director of Marketing, David Bregler.  Plaintiff's Complaint seems to be taken directly from the assertions made in the Bregler Affidavit.  Defendant was not afforded an opportunity to respond to Plaintiff's allegations, either through a written response or by appearing at the hearing on Plaintiff's Petition for Preliminary Injunction.  Defendant was able to provide an email setting out bullet points for why it believed that a TRO was not warranted, which was given to the state court Emergency Judge hearing Plaintiff's Petition, but this one-page cursory submission was not sufficient to set forth Defendant's position on this extremely

important matter. From the factual and procedural background of this case, it appears that the Emergency Judge granted Plaintiff's Petition for Preliminary Injunction based solely on Plaintiff's uncontested assertions in its Complaint, Petition, and accompanying affidavit.

After having had an opportunity to hear from Defendant in the form of a written Motion for Reconsideration with the attached affidavit of Joyce Johnson, and an on-the-record telephone conference held with all parties on April 23, 2009, this Court finds that Plaintiff has not demonstrated a likelihood of success on the merits of its underlying claim. Each of Plaintiff's factual assertions are vigorously disputed by Defendant, and at this point, with only a minimal factual record, it is impossible to decide which party would be successful on the merits of this case. Under such circumstances, a TRO is inappropriate because Plaintiff has not yet met its burden of demonstrating that it is likely to succeed on the merits of its claim. See id.; Summit Towne Center, 828 A.2d at 1001.[5]

>   b. Manifest injustice would result if the TRO remained in effect because the TRO entered by the state court: (1) was issued without proper notice and a hearing, and (2) it is invalid.

> i. *The TRO was granted without sufficient notice to Defendant and without a proper hearing.*

Under Pennsylvania Rule of Civil Procedure 1531(a), "A Court shall issue a preliminary injunction . . . only after written notice and a hearing . . ." *Pa. R.C.P. 1531(a)*. Under this Rule: "[A] preliminary injunction may be granted without notice and a hearing only when there exists a need for unusual haste so that a clear right may be protected from immediate and irreparable

---

[5] With respect to the fifth factor, Plaintiff has not sustained its burden of proving that there is offending activity that needs to be abated. Because the weight of the first five factors compel that the TRO be dissolved, the Court need not determine whether the sixth factor would apply here.

injury." WPNT, 661 A.2d at 411.  Plaintiff has not shown that there was a need for such haste. A hearing on the Petition could have been postponed a day or two in order to permit Defendant to obtain counsel and be heard before the state court Emergency Judge.  The furniture trade show was not scheduled to begin until April 24 or 25, 2009, and it does not appear that Plaintiff would have been irreparably harmed by the short delay.

Moreover, Defendant was informed of the existence of this lawsuit via email.  It appears on this record that Plaintiff's precipitous actions ensured that Defendant's position would not be effectively presented to the state court Emergency Judge who heard Plaintiff's Petition for Preliminary Injunction.  Defendant did not receive sufficient notice of the TRO and was for all practical purposes barred from participating in the process which lead to the issuance of the TRO.  See Commw. ex rel. Costa, 272 A.2d at 909; WPNT, 661 A.2d at 411 (vacating the grant of a preliminary injunction which was granted without hearing).

> ii.   *The TRO is invalid because it provided for a hearing more than five days after the issuance of the injunction in contravention of Pennsylvania Rule of Civil Procedure 1531(d).*

If an ex parte "special injunction" is granted, a hearing still must be held within five days of the issuance of the order, or the "special injunction" is invalid on its face. *Pa. R.P.C. 1531(d)* ("An injunction granted without notice to the defendant shall be deemed dissolved unless a hearing on the continuance of the injunction is held with five days after the granting of the injunction or within such other time as the parties agree or as the court upon cause shown shall direct.").  If an ex parte special injunction "is to extend beyond the five day limit either because the parities so agree, or because of cause shown, such a reason must appear in the decree."

Commw. ex rel. Costa, 272 A.2d at 909 ("The [special injunction] is also void because it provides for a hearing more than five days from the date of its issuance without setting forth in the decree the reasons for the extension of the hearing time beyond the give day limit mandated by *Pa. R.C.P. 1531(d)*.").

The ex parte order for a TRO was issued by the state court Judge on April 22, 2009. It provided for a hearing on April 30, 2009, more than five days from the date that the Order was issued. In order to be valid under Pennsylvania law, the Order must give a reason why the hearing was set more than five days later, and it does not do so. Commw. ex rel. Costa, 272 A.2d at 909; (Ex Parte TRO at 2.). No reason has been provided why a hearing on the TRO could not have occurred within the legally mandated five-day period.[6] Because the order for the TRO did not provide for a hearing within the five-day period required by Pennsylvania law, and also did not provide a reason for such delay, the Ex Parte TRO issued by the state court Judge on April 22, 2009 is invalid on its face. See Commw. ex rel. Costa, 272 A.2d at 909.

---

[6] Coincidentally, the date the hearing was scheduled also happens to be the day that the High Point trade show ends. There was little reason to hold a hearing on April 30, 2009, after the TRO would have expired under state law, when both parties allege extraordinary harm incident to their participation in the High Point Show.

## V. CONCLUSION

Based on the foregoing, and in accordance with the Order of this Court issued on April 24, 2009, the Ex Parte TRO entered by the state court Judge on April 22, 2009 must be dissolved. Defendant's Motion to Reconsider State-Court Ordered Temporary Injunction (Doc. No. 3) is granted.

BY THE COURT:

s/ Joel H. Slomsky
JOEL H. SLOMSKY,  J.